BRASURE'S PEST CONTROL, INC.,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　 )
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　C.A. No.　17-323-RGA-MPT
　　　　　　　　　　　　　　　　　　)
AIR CLEANING EQUIPMENT, INC.,　　　)
ROBERT CLEMENS, AND KEVIN YOW,　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)

## REPORT AND RECOMMENDATION

## I.　　INTRODUCTION

On February 9, 2017, Plaintiff Brasure's Pest Control ("BPC") filed its complaint

in the Superior Court of Delaware in Sussex County asserting claims of breach of

express warranty, consumer fraud in violation of 6 *Del. C.* § 2513, fraud, and negligent

misrepresentation against Defendants Air Cleaning Equipment, Inc. ("ACE"), Robert

Clemens, and Kevin Yow.[1]  On March 24, 2017, Defendants Clemens and Yow

(collectively, "individual defendants") filed a Notice of Removal from the Delaware

Superior Court to the United States District Court for the District of Delaware.[2]  BPC

subsequently filed its amended complaint on April 26, 2017, after the filing of Clemens'

and Yow's motion to dismiss for lack of personal jurisdiction on April 24, 2017.[3]  The

parties then stipulated that the "Motion to Dismiss filed in response to the original

Complaint shall be deemed filed with respect to the Amended Complaint to the same

extent, with no necessity to re-file."[4]

---

[1] D.I. 6 at 1.
[2] D.I. 11.
[3] *See* D.I. 5; *see also* D.I. 6; D.I. 8.
[4] D.I. 11.

Currently before the court is individual defendants' motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2).[5]

## II. BACKGROUND

BPC is a Delaware corporation that is in the business of residential and commercial pest control.[6] BPC also installs and maintains crawl space dehumidifiers in newly constructed homes.[7] ACE is a North Carolina corporation that manufactures and sells Horizon brand dehumidifiers.[8] Clemens is the former President of ACE and resides in North Carolina.[9] Yow is the former Vice President and a former sales representative of ACE, and also resides in North Carolina.[10]

In 2009, NV & Ryan Homes ("NVR") began contracting with BPC to install dehumidifiers in newly constructed houses.[11] Thereafter in 2011, BPC began purchasing Horizon dehumidifiers from ACE for installation in NVR homes.[12] Clemens and Yow represented to BPC that the dehumidifiers would last between ten and fifteen years, however they began to fail in a fraction of that time.[13] Between October 1, 2011 and December 31, 2015, BPC purchased approximately 1,500 dehumidifiers from ACE for installation in new homes across Delaware and Maryland.[14] BPC inspected each newly installed unit at least once every six months for one year after the date of

---

[5] See D.I. 5; see also D.I. 11.
[6] D.I. 6 at 1-2.
[7] Id.
[8] Id.
[9] Id. at 2.
[10] Id.
[11] D.I. 8 at ¶ 8.
[12] Id. at ¶ 10.
[13] Id. at ¶ 11.
[14] Id. at ¶ 12.

2

installation.[15] During these inspections, BPC noticed the dehumidifiers were failing, many within the first year of installation.[16] The failures were predominantly caused by faulty compressors, which ultimately rendered the dehumidifiers inoperable.[17]

Because of the aforementioned situation, Clemens and Yow, on behalf of ACE, orally promised that ACE "would incur all costs related to shipping, repair, and/or replacement of the faulty, broken, or malfunctioning . . . dehumidifiers."[18] Relying on this promise, BPC continued to purchase dehumidifiers from ACE.[19] However, the replacement dehumidifiers failed at the same rate as the original units.[20]

By late September 2014, BPC communicated its concerns to Clemens and Yow, and suggested it would take its business elsewhere.[21] Clemens made the following representations to BPC via email:

> We will continue to liberally support the Horizon units you've installed for their warranty period (5 years on compressor, evaporator and condenser; 1 year on other parts); we will continue to replace non-cooling units with new Galaxy units; we will fix any other unit warranty issues and return them to you for reuse; we will continue to handle shipping costs in both directions. . . .[22]

Thereafter, Yow acknowledged and reiterated these commitments to BPC.[23] For a limited time, ACE honored Yow's commitments.[24] However, unknown to BPC, Farhad

---

[15] *Id.* at ¶ 13.
[16] *Id.* at ¶ 14 ("[A]s of 2016, approximately half of the dehumidifiers purchased from ACE since 2011 had failed.").
[17] *Id.* at ¶ 15.
[18] *Id.* at ¶ 16.
[19] *Id.*
[20] *Id.* at ¶ 17.
[21] *Id.* at ¶ 18.
[22] D.I. 8-1, Ex. 1 at 2; D.I. 8 at ¶ 19.
[23] D.I. 8 at ¶ 21.
[24] *Id.* at ¶ 22.

Shahryary ("Shahryary"), majority shareholder and successor President of ACE, was unaware of, and did not approve, these commitments to BPC.[25]

In January 2016, Clemens and Yow resigned their positions with ACE and immediately began working for Seaira Global, LLC ("Seaira").[26] Seaira is owned, at least in part, by Clemens and was allegedly created to compete with ACE by serving the same customer base.[27] Clemens and Yow allegedly planned the formation of Seaira, the hiring of former ACE employees, and the taking over of ACE's lease to render ACE incapable of meeting its express commitments to BPC.[28]

On November 24, 2015, ACE repudiated its express commitments in writing.[29] Around mid-February 2016, ACE, through its acting President Shahryary, blamed the dehumidifier failures on organic matter and a lack of service.[30] As of March 1, 2016, ACE ceased doing business with BPC and refused to perform any other repair or replacement work on its dehumidifiers.[31]

## III.   GOVERNING LAW

### A.   Personal and General Jurisdiction

FED. R. CIV. P. 12(b)(2) directs dismissal when the court lacks personal jurisdiction over the defendant.[32] A court reviewing a motion to dismiss under Rule

---

[25] *Id.* at ¶ 20.

[26] *Id.* at ¶¶ 25-26.

[27] *Id.* at ¶¶ 28-29.

[28] *Id.* at ¶¶ 33-34.

[29] *Id.* at ¶ 36; *see* D.I. 8-1 at Ex. 2.

[30] D.I. 8 at ¶ 37; *see* D.I. 8-1 at Ex. 3.

[31] D.I. 8 at ¶ 38.

[32] *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 622 (D. Del. 2015); FED. R. CIV. P. 12(b)(2).

12(b)(2) must accept as true all allegations of jurisdictional fact made by the plaintiff, and resolve all factual disputes in the plaintiff's favor.[33] "Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction."[34] Since a Rule 12(b)(2) motion requires resolution of factual issues outside the pleadings, the plaintiff must produce sworn affidavits or other competent evidence.[35]

In order to establish personal jurisdiction, a plaintiff must plead facts sufficient to satisfy two requirements by a preponderance of the evidence, one statutory and one constitutional.[36] In regards to the statutory requirement, Delaware courts must determine whether a statutory basis exists for jurisdiction under the State's long-arm statute.[37] The constitutional basis requires courts to examine whether the exercise of jurisdiction comports with the defendant's right to due process.[38]

Under Delaware's long-arm statute, a court may exercise personal jurisdiction over a defendant when the defendant or its agent:

---

[33] *Id.* (citing *Traynor v. Liu*, 495 F. Supp. 2d 444, 448 (D. Del. 2007)).

[34] *Id.*; *see also Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Godo Kaisha IP Bridge 1 v. TCL Commc'n. Tech. Holdings Ltd.*, CV 15-634-SLR-SRF, 2016 WL 4413140, at *2 (D. Del. Aug. 17, 2016), *report and recommendation adopted*, CV 15-634-SLR/SRF, 2016 WL 5723653 (D. Del. Sept. 29, 2016).

[35] *Phunware, Inc.*, 117 F. Supp. at 622 (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984)).

[36] *Id.* (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984)); *Reach & Assocs. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003).

[37] *Phunware, Inc.*, 117 F. Supp. at 622; *Reach & Assocs.* 269 F. Supp. 2d at 502.

[38] *Phunware, Inc.*, 117 F. Supp. at 622; *Reach & Assocs.* 269 F. Supp. 2d at 502; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

(1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply services or things in this State; (3) Causes tortious injury in the State by an act or omission in the State; (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State. . . .[39]

"With the exception of (c)(4), the long-arm statute requires a showing of specific jurisdiction."[40] 10 *Del. C.* § 3104(c)(4) confers general jurisdiction, which requires a greater number of contacts, but allows the exercise of personal jurisdiction even when the claim is unrelated to the forum contacts.[41] If the court determines that the defendant is within reach of the long-arm statute, it must analyze whether "the exercise of personal jurisdiction comports with due process, to wit, whether plaintiff has demonstrated that defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State,' so that it should 'reasonably anticipate being haled into court there.'"[42] "For the court to exercise specific personal jurisdiction consistent with due process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state."[43] In order for the court to exercise general personal jurisdiction consistent with due process, "plaintiff's cause of action can be unrelated to defendant's activities in the forum state, so long as defendant has 'continuous and systematic

---

[39] 10 *Del. C.* § 3104(c)(1)-(4).

[40] *Phunware, Inc.,* 117 F. Supp. 3d at 622; *see also Shoemaker v. McConnell,* 556 F. Supp. 2d 351, 354-55 (D. Del. 2008).

[41] *Phunware, Inc.,* 117 F. Supp. 3d at 622; *see also Applied Biosystems, Inc. v. Cruachem, Ltd.,* 722 F. Supp. 1458, 1466 (D. Del. 1991).

[42] *Phunware, Inc.,* 117 F. Supp. at 623 (citing *World-Wide Volkswagen Corp. v. Woodsen,* 444 U.S. 286, 297 (1980)).

[43] *Id.; see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).

contacts with the forum state.'"[44]

Section 3104(c) has been "broadly construed to confer jurisdiction to the maximum extent possible under the due process clause."[45] "Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction."[46] "In the absence of a nexus requirement, it is sufficient if the record demonstrates a prima facie basis for the existence of an included activity under (c)(4)."[47] The standard for general jurisdiction, while seemingly broad, is high and not often met.[48] However, to exercise personal jurisdiction under § 3104(c)(1) and (c)(4), some act must actually occur in Delaware.[49]

## B.    Fiduciary Shield Doctrine

"The purpose of the fiduciary shield doctrine is to prohibit acts performed by an individual in the individual's capacity as a corporate employee from serving as the basis for personal jurisdiction over that individual."[50] The corporate shield doctrine is not an absolute bar to personal jurisdiction.[51] Rather, "all forum-related contacts, including

---

[44] *Id.* at 623 (citing *Applied Biosystems, Inc.,* 722 F. Supp. at 1458).

[45] *LaNuova D & B, S.p.A. v. Bowe Co., Inc.,* 513 A.2d 764, 768 (Del. 1986); *Speakman Co. v. Harper Buffing Mach. Co.,* 583 F. Supp. 273, 274 (D. Del. 1984); *Moore v. Little Giant Indus., Inc.,* 513 F. Supp. 1043, 1048 (D. Del. 1981), *aff'd,* 681 F.2d 807 (3d Cir. 1982).

[46] *LaNuova D & B, S.p.A.,* 513 A.2d at 768 (citing *Speakman Co. v. Harper Buffing Mach. Co.,* 583 F. Supp. 273, 274 (D. Del. 1984)).

[47] *Id.*

[48] *TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.,* 961 F. Supp. 686, 691 (D. Del. 1997); *see Sears, Roebuck & Co. v. Sears, plc,* 744 F. Supp. 1297, 1304 (D. Del. 1990).

[49] *TriStrata Tech., Inc.,* 961 F. Supp. at 690.

[50] *Id.*

[51] *Mobil Oil Corp. v. Adv. Envtl. Recycling Techs.,* 833 F. Supp. 437, 443 (D. Del. 1993).

7

those taken in an employee's fiduciary capacity, should be considered in determining whether to exercise personal jurisdiction over the individual."[52] "Thus, the employee's acts . . . must still occur in Delaware."[53] Absent actual conduct in Delaware, defendants' positions as President and Vice President of a defendant corporation are insufficient to establish personal jurisdiction.[54]

## IV. DISCUSSION

### A. 10 *Del. C.* § 3104(c)(1)

The individual defendants argue that, because they reside in North Carolina, jurisdiction in Delaware is not proper.[55] Specifically, they contend BPC fails to demonstrate that either Clemens or Yow, individually, transacted any business in Delaware.[56] BPC asserts in its reply brief that the individual defendants "undertook sustained and systemic conduct that resulted in multiple sales of goods to [it]. . . ."[57] BPC relies on *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272 (D. Del. 1993) in support of its position that the individual defendants transacted business in Delaware.[58]

BPC's reliance on *Thorn EMI N. Am., Inc.* is misplaced. Any contacts the

---

[52] *TriStrata Tech., Inc.*, 961 F. Supp. at 690.
[53] *Id.*
[54] *See id.* at 690; *see generally Oil Mobil Corp. v. Adv. Envtl. Recycling Techs.*, 833 F. Supp. 437 (D. Del. 1993).
[55] D.I. 6 at 1.
[56] *Id.* at 5-6.
[57] D.I. 14 at 9.
[58] *See* D.I. 14 at 8-9 (BPC argues that, like the defendant corporation in *Thorn EMI N. Am., Inc.*, the individual defendants in the case at bar had a business plan to solicit business in Delaware and to distribute their products in Delaware, which resulted in multiple shipments of dehumidifiers to BPC.).

individual defendants may have had with Delaware occurred solely in connection with

ACE. This situation suggests application of the corporate shield doctrine, which did not

apply in *Thorn EMI N. Am., Inc.* because in that case the defendant was a corporation,

not two individual employees.[59] Although it is undisputed ACE shipped approximately

1,500 dehumidifiers to BPC, BPC has not pled facts sufficient to justify personal

jurisdiction over the individual defendants.[60] For the court to exercise personal

jurisdiction under subsection (c)(1), some act by the individual defendants must have

occurred in Delaware.[61] BPC's amended complaint is void of any such allegation.[62]

Even considering "all forum-related contacts, including those taken in [a] . . . fiduciary

capacity," personal jurisdiction over the individual defendants, based on 10 *Del. C.* §

3104(c)(1), is improper.[63]

### B.    10 *Del. C.* § 3104(c)(2)

Next, individual defendants argue BPC fails to show that they, individually,

entered any contract to supply services or things in Delaware.[64] BPC responds that

§ 3104(c)(2) applies because Clemens and Yow shipped goods to Delaware.[65] BPC

cites *Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043 (D. Del. 1981), *aff'd*, 681 F.2d

807 (3d Cir. 1982) in support of its position that personal jurisdiction exists over

---

[59] *See generally Thorn EMI N. Am., Inc.*, 821 F. Supp. at 274.
[60] *See generally* D.I. 8 (BPC has not pled that the individual defendants shipped goods to Delaware. Rather, BPC only alleges that ACE–a corporation–shipped the faulty units to it.).
[61] *TriStrata Tech., Inc.*, 961 F. Supp. at 690.
[62] *See generally* D.I. 8.
[63] *TriStrata Tech., Inc.*, 961 F. Supp. at 690.
[64] D.I. 6 at 5-6; D.I. 15 at 1.
[65] D.I. 14 at 7-8.

nonresidents who shipped goods to purchasers in Delaware.[66]

Again, BPC's reliance on *Moore* is misplaced. Although Delaware is a "single act" jurisdiction, meaning that even a single transaction engaged in by the nonresident within the state can confer personal jurisdiction, the defendant in *Moore* was a corporation.[67] As previously stated, BPC fails to allege the individual defendants themselves shipped goods to Delaware.[68] The individual defendants must perform the act in the state.[69] Therefore, even construing the facts in plaintiff's favor, no personal jurisdiction under 10 *Del. C.* § 3104(c)(2) exists.

## C.    10 *Del. C.* § 3104(c)(4)

The individual defendants assert BPC's complaint contains no factual allegations that Clemens or Yow's conduct occurred in Delaware, or support the heightened contention that either regularly does or solicits business in Delaware, engages in any persistent course of conduct in the State, or derives substantial revenue from services, or things used or consumed in the State.[70] BPC, relying on *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764 (Del. 1986), contends that because Clemens and Yow implemented a warranty on the broken dehumidifiers, this court has

---

[66] *Id.*

[67] *Moore*, 513 F. Supp. at 1047-48, *aff'd*, 681 F.2d 807 (3d Cir. 1982).

[68] *See* D.I. 8; D.I. 14 at 7-8 (BPC states that it relied on alleged "material misrepresentations and omissions" by the individual defendants "in making multiple purchases of dehumidifier units," *not* that Clemens and Yow personally shipped the units to it.).

[69] *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998) ("While an act as simple as shipping goods to Delaware is sufficient under § 3104(c)(2), it is clear that this section also requires that the defendant perform the act in this State.").

[70] D.I. 6 at 7; D.I. 15 at 3-4.

jurisdiction over individual defendants.[71]

As discussed above, Clemens and Yow, as individuals, have not engaged in any conduct in Delaware, let alone met the high standard of § 3104(c)(4). The complaint makes no such allegations that individual defendants regularly engaged in or solicited business, engaged in any persistent course of conduct, or derived substantial income from things used in the State.[72] Therefore, based on the allegations in the complaint and the attached exhibits, jurisdiction over individual defendants pursuant to subsection (c)(4) is not demonstrated.

### Due Process

Having concluded that BPC does not have either personal or general jurisdiction over the individual defendants, the court need not address the merits of either party's due process arguments.

## V. CONCLUSION

For the reasons contained herein, it is recommend that:

(1) Defendant's motion to dismiss for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for

---

[71] D.I. 14 at 10.
[72] *See generally* D.I. 8; 10 *Del. C.* § 3104(c)(4).

Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: August 1, 2017

/s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE